United States District Court
Southern District of Texas

**ENTERED**

June 03, 2026

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANTHONY OBUTE, | § | |
| (BOP # 02891-506) | § | |
| | § | |
| *Petitioner*, | § | |
| | § | CIVIL ACTION NO. H-25-3815 |
| vs. | § | CRIMINAL ACTION NO. H-21-602 |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| *Respondent*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is petitioner Anthony Obute's motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (Dkt. 91). The United States filed a response in opposition to the motion. (Dkt. 94). Obute filed a reply. (Dkt. 97). Having considered the motion, the response and reply, the record, the Court's own recollection of the proceedings, and the applicable law, the Court determines that Obute's motion should be denied without a hearing for the reasons explained below.

## I.   BACKGROUND

In December 2021, a federal grand jury returned an indictment charging Obute with two counts of aiding and abetting the unlawful distribution and dispensing of controlled substances. (Dkt. 18). Attorney Richard Kuniansky was initially

appointed to represent Obute. (Dkt. 7). The next day, Obute retained Attorney Guy Lee Womack, and he was substituted as counsel. (Dkt. 9). Jury trial was set for February 22, 2022. (Dkt. 22).

On January 30, 2022, Womack filed an unopposed motion to continue trial. (Dkt. 31). The motion was granted, and trial was reset for March 21, 2022. (Dkt. 32).

On February 18, 2022, Attorney Bassey Otu Akpaffiong moved to be substituted as counsel in place of Womack. (Dkt. 35). The motion was granted on February 22, 2022. (Dkt. 36). Akpaffiong then filed a second motion to continue trial, which was granted. (Dkt. 37). Trial was reset to June 6, 2022. (Dkt. 38). In May 2022, Akpaffiong filed a third motion to continue trial, which was granted. (Dkts. 39, 40). Trial was reset to August 15, 2022. (Dkt. 40).

On July 26, 2022, Akpaffiong filed a fourth motion to continue trial. (Dkt. 42). Although the motion was unopposed, the Court denied it, leaving trial set for August 15. (Dkt. 43).

On August 2, 2022, Attorney Peyton Zimmerman Peebles, III, appeared as co-counsel for Obute. (Dkt. 44). The same day, at the parties' request, the Court set a rearraignment hearing for August 4, 2022. (Dkt. 45).

At the start of the hearing, Akpaffiong told the Court that Obute had had a change of heart and did not want to enter a guilty plea at that time. (Dkt. 86, p. 3).

2/25

The Court responded that the hearing time would then instead be used as a pretrial conference for the August 15 jury trial. (*Id.*). When the Court asked about the exchange of evidence and exhibits, Akpaffiong stated that he had not yet provided defense evidence to the Government because "we did not assume we were going to trial on this matter." (*Id.* at 4). The Court noted that there was a trial date set and that the exchange of evidence and exhibits was required by the scheduling order. (*Id.* at 4–5). The Court then told Obute that the Court was not upset with him, that he had an absolute right to plead not guilty, and he had the right to go to trial. (*Id.* at 5). But the Court also pointed out that any agreements Obute had with the Government about the charges or any aspect of his sentence would go away if he went to trial. (*Id.*).

Obute then personally addressed the Court, stating that he wanted more time to discuss the case with counsel. (*Id.* at 6). He stated that his attorney—apparently referencing Peebles—"just came into the case about six weeks ago" and that he needed "time to set down with him." (*Id.*). When the Court asked how long Akpaffiong had been on the case, Obute responded that it had been about three months—which is demonstrably untrue as evidenced by the record. (*Id.*). Based on that discussion, the Court granted a recess so that Obute could speak further with counsel. The Court also stated that when the hearing resumed, they would either have a plea hearing or a pretrial conference. (*Id.* at 6–7).

3/25

Before the recess began, the prosecutor stated that the current plea offer was the Government's "absolute best deal" and that if a plea was not entered at that hearing, any future plea would be to the full indictment. (*Id.* at 7). The prosecutor noted that the indictment contained two counts, each of which carried a twenty-year statutory maximum sentence. (*Id.*). The Court added that those sentences could be ordered to run consecutively and also noted that there is no longer parole in the federal court system. (*Id.* at 7–8). The Court then took a twenty-minute recess. (Id. at 9).

When the hearing reconvened, Akpaffiong told the Court that Obute was going to accept the plea agreement and enter a guilty plea. (*Id.*). The Court placed Obute under oath. (*Id.* at 10). While under oath, Obute affirmed that he had had sufficient time to consult with counsel. (*Id.*). He affirmed that he was satisfied with his attorneys. (*Id.* at 11). Both Akpaffiong and Attorney Peebles affirmed that they had had sufficient time to investigate the law and the facts of the case. (*Id.*). They both also affirmed that Obute understood the nature of the charges and had cooperated with them. (*Id.*).

Obute affirmed that he had received and reviewed a copy of the indictment. (*Id.* at 12). The Court reviewed the elements of the offense and told Obute that each count carried a penalty of "not more than 20 years imprisonment, a minimum of three years supervised release after any imprisonment, a fine of not more than $1

4/25

million and a special assessment of $100 per count of conviction." (*Id.*). Obute affirmed that he understood the nature of the charges and the possible penalties. (*Id.*). The Court then reviewed Obute's right to plead not guilty, along with the rights he would have at trial that would be waived by entering a plea. (*Id.* at 12–13).

The Court then addressed the plea agreement. (*Id.* at 14). The prosecutor stated that the plea agreement included a waiver of the right to appeal except as to the ineffective assistance of counsel. (*Id.* at 14–15). Obute affirmed that he had talked with counsel about the Sentencing Guidelines and how they might apply to his case. (*Id.* at 15). He affirmed that he understood that the Court could not determine a sentence until after the presentence report had been completed. (*Id.* at 15–16). He affirmed that he understood that he would have the right to challenge the facts included in the presentence report. (*Id.*). He also affirmed that he understood that the Court had the authority to impose a sentence more or less severe than that recommended by the Guidelines. (*Id.*).

The prosecutor stated that the plea agreement included the potential for a sentence reduction based on substantial assistance, as well as the extra point for timely pleading. (*Id.* at 16–17). The parties agreed on the appropriate converted drug weight. (*Id.* at 17). They agreed to the application of a two-level enhancement for a leadership role and a two-level enhancement for abuse of trust. (*Id.*). The

Government also agreed to recommend a sentence at the low end of the guidelines range. (*Id.* at 17–18).

Obute affirmed that he understood all of these provisions of the plea agreement. (*Id.* at 18). He denied that anyone had made him any promises regarding his sentence to obtain his guilty plea. (*Id.*). He denied that anyone had threatened, coerced, or forced him to plead guilty. (*Id.*). He affirmed that he understood that the Court was free to assess any legal punishment regardless of the Government's recommendation. (*Id.* at 18–19).

The prosecutor then presented the factual basis for the plea. (*Id.* at 19–21). Obute affirmed that the facts recited by the prosecutor were true and that he had intended to commit the acts described. (*Id.* at 21). The Court then asked Obute how he wanted to plead to the one count, and he stated, "I plead guilty." (*Id.* at 22). Obute affirmed that he had read and understood the plea agreement. (*Id.*). He then signed the plea agreement in open court. (*Id.*). The Court found Obute's plea to be knowing and voluntary, it accepted the guilty plea, and it set the matter off for sentencing. (*Id.*).

As to the plea agreement itself, it contains the following provisions relevant to Obute's current claims:

> 2.     The statutory maximum penalty for each violation of Title 21, United States Code, Section 841, is a term of imprisonment of not

more than twenty years and a fine of not more than $1,000,000, or both; full restitution, if applicable; and forfeiture of assets as outlined below.

. . .

10.   In agreeing to these waivers [of appeal and collateral attack], Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States, or the Probation Office, is a prediction and not a promise, **did not induce his guilty plea**, and is not binding on the United States, the Probation Office, or the Court. The United States does not make any promise or representation concerning what sentence Defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

. . .

16.   The United States and Defendant agree to recommend to the Court the following about the application of the Sentencing Guidelines to Defendant's Guidelines range, based on the factual basis for the guilty plea outlined in Paragraph 18:

. . .

(c)   Defendant and the United States agree to recommend to the Court that a two-level enhancement applies under Section 3B1.3, because Defendant abused a position of trust or special skill;

(d)   Defendant and the United States agree that a two-level enhancement applies under Section 3B1.1(c), because the Defendant was an organizer, leader, manager, or supervisor of criminal activity, other than as described in Section 3B1.1(a) or (b);

. . .

> 25. Defendant stipulates and agrees that the Defendant obtained *at least* $4,000,000.00 from the criminal offense in this case and that the factual basis for his guilty plea in this case supports the forfeiture of *at least* $4,000,000.00. Defendant stipulates and admits that one or more of the conditions set forth in Title 21, United States Code, Section 853(p), exists. Defendant agrees to forfeit any of his property in substitution, up to a total forfeiture of $4,000,000.00. Defendant agrees to the imposition of a personal money judgment in that amount.

(Dkt 48, pp. 2, 5–6, 13) (emphasis in original). Obute also signed an addendum to the plea agreement, which states as follows:

> I have consulted with my attorneys and fully understand all my rights with respect to the Indictment against me. My attorneys have fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual that may apply in my case. I have read and carefully reviewed every part of this Plea Agreement with my attorney. I understand this Plea Agreement, and I voluntarily agree to its terms.

(*Id.* at 17).

On April 3, 2023, the Court sentenced Obute to a bottom-of-the-Guidelines sentence of 210 months in prison followed by three years of supervised release and a special assessment of $100. (Dkt. 65). This sentence was based on a Guidelines range that included a two-level increase for maintaining premises for the purpose of manufacturing or distributing controlled substances under § 2D1.1(b)(12) in addition to the increases and decreases included in the plea agreement. (Dkt. 58, p.

8). Counsel objected to this two-level increase, both in writing and again at the sentencing hearing, but the Court overruled the objections. (Dkts. 56, p. 2; 84, pp. 3–4). The Court also entered a forfeiture judgment of $4,000,000. (Dkt. 67). Judgment was entered on April 25, 2023. (Dkt. 74).

In February 2024, the Court of Appeals for the Fifth Circuit affirmed Obute's conviction and sentence. *See United States v Obute*, No. 23-20143, 2024 WL 2349290 (5th Cir. Feb. 15, 2024). Obute filed a timely petition for writ of certiorari to the United States Supreme Court, which was denied on October 7, 2024. *See Obute v. United States*, 145 S. Ct. 203 (2024).

On August 22, 2025, Obute, proceeding *pro se*, filed this motion under § 2255, raising the following claims:

1. Ineffective assistance of counsel for:

   a. failing to request a continuance at the rearraignment hearing;
   b. being unprepared for trial;
   c. failing to explain the consequences of waiving appellate rights;
   d. providing misadvice concerning the consequences of the plea;
   e. providing misadvice concerning the sentencing exposure.

2. Cumulative error.

(Dkt. 91). He supported his motion with a sworn declaration, in which he avers that he did not fully understand the charges against him, had not reviewed the evidence with counsel, had not discussed possible defenses, and had not had the opportunity to make an informed choice about whether to go to trial. (*Id.* at 42). He avers that

9/25

counsel had only been in the case for about six weeks, and he agreed to plead guilty under the pressure of believing that counsel was unprepared for trial. (*Id.*). He asserts that he did not understand that he was giving up his right to appeal by signing the plea agreement. (*Id.*). He alleges that he did not understand that sentencing enhancements could be applied that were not discussed in the plea agreement. (*Id.* at 43). He swears that he believed that the plea agreement "set a clear sentencing outcome" and that he did not know that he was exposed to such a lengthy sentence. (*Id.*). He also swears that he did not know that the government would seek a $4,000,000 forfeiture judgment against him. (*Id.*). He contends that his plea was based on a misunderstanding of his sentence and that he had been led to believe that he was facing much less time. (*Id.*). He avers that he would not have pleaded guilty had he been properly advised. (*Id.* at 44). Other than this sworn declaration, Obute offers no evidence to support his claims.

The Court ordered the Government to respond to Obute's motion, (Dkt. 93), and the Government filed a response in opposition, along with multiple exhibits. (Dkt. 94). Obute filed a timely reply. (Dkt. 97).

## II.   **LEGAL STANDARD**

"Relief under 28 U.S.C.A. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of

10/25

justice." *United States v. Mimms*, 43 F.3d 217, 219 (5th Cir. 1995) (per curiam) (quoting *United States v. Vaughn,* 955 F.2d 367, 368 (5th Cir. 1992) (per curiam)). In keeping with this limited scope, a petitioner seeking relief under § 2255 must establish that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).

But even constitutional errors may not be raised for the first time in a § 2255 motion unless the petitioner shows both cause for the procedural default and actual prejudice resulting from the alleged error. *See Bousley v. United States*, 523 U.S. 614, 622 (1998); *United States v. Scruggs,* 691 F.3d 660, 666 (5th Cir. 2012). To prove "cause," the petitioner must "show that 'some objective factor external to the defense' prevented him from raising on direct appeal the claim he now advances." *United States v. Guerra*, 94 F.3d 989, 993 (5th Cir. 1996) (quoting *Romero v. Collins*, 961 F.2d 1181, 1183 (5th Cir. 1992) (per curiam)); *see also United States v. Cruise*, Civil No. H-25-2169, 2026 WL 1052851, *17 (S.D. Tex. Apr. 16, 2026). To prove "actual prejudice," the petitioner must show that he has suffered an actual and substantial disadvantage as a result of the alleged error. *See United States v. Frady*, 456 U.S. 152, 170 (1982). In the context of a guilty plea, this requires the petitioner

11/25

to show that but for the error, he would not have pleaded guilty and would have instead insisted on going to trial. *See Guerra*, 94 F.3d at 994.

The cause-and-prejudice standard is a "significantly higher hurdle" than the plain error standard required on direct appeal. *Frady*, 456 U.S. at 166. This higher standard is appropriate because once the opportunity for direct appeal has been exhausted, courts are entitled to presume the petitioner was fairly convicted. *Id.* at 164; *see also United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998) (presuming defendant to be fairly and finally convicted after direct appeal).

## III.    DISCUSSION

Obute's § 2255 motion raises five claims of ineffective assistance of trial counsel. Ineffective assistance of counsel, if shown, satisfies the requisite cause-and-prejudice standard. *See United States v. Acklen*, 47 F.3d 739, 742 (5th Cir. 1995). Such claims are therefore properly raised for the first time in a § 2255 motion. *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991) (en banc).

Claims of ineffective assistance of counsel, whether at trial or on direct appeal, are governed by the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a § 2255 petitioner to show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Id.* at 687. "Unless a defendant makes both showings, it cannot be said

12/25

that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.*

To establish the deficient-performance prong of *Strickland*, the petitioner must show that counsel's performance fell below an objective standard of reasonableness. *Id.* at 687-88. To meet this standard, counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687; *see also Buck v. Davis*, 580 U.S. 100, 118–195 (2017) (reaffirming that "[i]t is only when the lawyer's errors were 'so serious that counsel was not functioning as the "counsel" guaranteed . . . by the Sixth Amendment' that *Strickland*'s first prong is satisfied") (citation omitted). In addition, because of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Fields*, 761 F.3d 443, 453 (5th Cir. 2014) (quoting *Strickland*, 466 U.S. at 689). "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752–53 (5th Cir. 2003) (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)). Therefore, "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and

13/25

strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Fields,* 761 F.3d at 454 (quoting *Strickland,* 466 U.S. at 690–91).

In addition to showing deficient performance, the petitioner alleging ineffective assistance of counsel must also show that he was prejudiced by that deficient performance. *See Strickland,* 466 U.S. at 687. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* In essence, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "[T]he question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Harrington v. Richter,* 562 U.S. 86, 111 (2011). Instead, "[t]he likelihood of a different result must be substantial, not just conceivable." *Id.* at 112.

In the context of a guilty plea, prejudice occurs if there is a reasonable probability that, but for counsel's deficiencies, the defendant "would not have pleaded guilty and would have insisted on going to trial." *United States v. Valdez,* 973 F.3d 396, 402–03 (5th Cir. 2020) (quoting *Hill v. Lockhart,* 474 U.S. 52, 59

14/25

(1985)).  When considering the validity of a guilty plea, courts consider "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Lockhart,* 474 U.S. at 56 (cleaned up).  In doing so, "[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee v. United States*, 582 U.S. 357, 369 (2017). Factors relevant to determining whether a defendant would have refused to plead guilty and would have gone to trial include "the risks [he] would have faced at trial," "his 'representations about his desire to retract his plea,'" and "the district court's admonishments." *Valdez*, 973 F.3d at 403 (quoting *United States v. Batamula*, 823 F.3d 237, 240 n.4 (5th Cir. 2016) (en banc)).

## A.   Failure to Request a Continuance (Claim 1(a))

Obute first contends that trial counsel provided ineffective assistance by failing to request a continuance at the rearraignment hearing when Obute expressed concerns that he had not had sufficient time to speak with his counsel.  Obute fails to show either deficient performance or prejudice.

In general, counsel does not provide ineffective assistance by failing to make futile motions or raise futile objections. *See, e.g., Roberts v. Thaler*, 681 F.3d 597, 612 (5th Cir. 2012); *Koch v Puckett*, 907 F.2d 524, 527 (5th Cir. 1990).  "An

attorney's failure to raise a meritless argument thus cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue." *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999).

It is apparent from the record as a whole that any motion for continuance counsel may have made at the rearraignment hearing would have been denied. The Court had denied Obute's fourth motion to continue the trial only days before the hearing, even though the motion was unopposed. And the Court made it clear at the start of the hearing that trial was not going to be reset again. The Court stated in no uncertain terms that if Obute elected not to plead guilty, the Court would go forward with a pretrial conference that day and the trial previously scheduled for August 15. Under these circumstances, counsel could have reasonably determined that it would be better strategy not to seek another continuance. Further, because it is apparent that any motion for a continuance would have been denied, Obute cannot show that the outcome of the proceedings would have been different but for counsel's failure to request a continuance.

Obute's claim that counsel provided ineffective assistance by failing to make a motion for continuance that would have inevitably been denied is meritless. He is not entitled to relief on this basis, and this claim is denied.

16/25

## B.   Lack of Trial Preparation (Claim (1b))

Obute next contends that trial counsel provided ineffective assistance by being unprepared to go to trial. This claim is refuted by the record for two reasons.

First, Obute's interpretation of counsel's statement is not supported by the record. He bases this claim on Akpaffiong telling the Court that he had not yet provided evidence and exhibits to the Government because "we did not assume we were going to trial on this matter." Obute contends that this statement shows that counsel was not prepared to go to trial. However, read in context, it is clear that Akpaffiong's statement was an explanation for his failure to comply with the Court's scheduling order rather than a comment on his trial preparation. That counsel were not *expecting* to go to trial does not mean that they were not *prepared* to go to trial. Obute's *post hoc* interpretation equating a lack of expectation with a lack of preparation has no basis in the record and is not indicative of deficient performance by counsel.

Second, Obute offers no credible evidence of ensuing prejudice. He contends that he was compelled to enter a guilty plea involuntarily rather than face the prospect of trial with unprepared counsel. He contends that counsel had only been in the case for six weeks and had not had time to become prepared. But the record shows that Akpaffiong had been counsel of record for almost six months at the time

17/25

of the hearing. Obute's declaration that directly conflicts with clear record evidence is not credible.

Further, Obute did not state a desire to go to trial at the rearraignment hearing; instead, he only requested additional time to discuss the plea offer with counsel. In addition, after a recess to talk with counsel, admonishments from the Court, and a factual basis presented by the Government, Obute affirmatively stated that the factual basis was true and that he wished to enter a guilty plea. These contemporaneous statements contradict his current *post hoc* assertions that he did not want to enter a guilty plea and instead wanted to proceed to trial. His current self-serving declaration does not provide credible evidence of prejudice sufficient to warrant an evidentiary hearing. *See, e.g., Lee,* 582 U.S. at 369 (noting that courts should not upset a plea based on *post hoc* assertions from a defendant that conflict with evidence contemporaneous with entry of the plea); *United States v Arledge,* 597 F. App'x 757, 759 (5th Cir. 2015) (per curiam) (noting that a district court may consider its own knowledge of the record and "clear contradictions between an affidavit and other record documents to determine whether the § 2255 movant is entitled to 'no relief'").

The record contemporaneous with Obute's plea does not support his claim that counsel was unprepared to go to trial, nor does it support his current assertion

18/25

that his plea was involuntary. He is not entitled to relief on this basis, and this claim is denied.

### C.   Failure to Explain Consequences of Waiver of Rights (Claim 1(c))

Obute next contends that trial counsel provided ineffective assistance by failing to explain the scope of the plea and collateral-attack waivers in the plea agreement. Specifically, he contends that trial counsel failed to explain that enhancements for maintaining a premises or abusing a position of trust could be imposed at sentencing and that any challenge to those enhancements would be waived. This claim is likewise refuted by the record of the rearraignment hearing.

During the plea colloquy, which occurred after a recess to provide Obute with additional time to consult with his attorneys, he affirmed under oath that he had had sufficient time to consult with his attorneys, that they had discussed how the Sentencing Guidelines might apply to his case, that he had read and understood the plea agreement. The plea agreement, which Obute swore that he had read and understood, specifically states that the parties agreed that a two-level enhancement for abusing a position of trust would be included. Moreover, the prosecutor specifically referenced this enhancement when explaining the plea agreement to the Court during the plea hearing. Obute's current contention that he was unaware that this enhancement could be applied is simply not credible in light of his prior sworn testimony and the record as a whole.

19/25

As to the enhancement for maintaining a premises for drug distribution, the record does not show that it was specifically discussed either in the plea agreement or at the rearraignment hearing.  But Obute was advised in both the plea agreement and at the hearing that no sentence could be determined until the presentence investigation was completed, that the Guidelines themselves were advisory, and that his sentence would be completely within the discretion of the Court after consideration of the Guidelines.  He was specifically advised that the sentence could be more or less severe that what was calculated under the Guidelines.  Despite these admonishments, Obute entered his plea and swore that he was not relying on any promises or assertions about what sentence he might receive.  His current assertion that he would not have entered the plea had he known that one potential enhancement might be determined to apply contradicts the contemporaneous record and is therefore not credible.  See *Lee,* 582 U.S. at 369 (courts should not upset a plea based on *post hoc* assertions from a defendant that conflict with evidence contemporaneous with entry of the plea).

The record contemporaneous with Obute's plea does not support his claim that his plea was involuntary due to a lack of understanding of the potential sentencing enhancements.  He is not entitled to relief on this basis, and this claim is denied.

20/25

## D.    Failure to Explain Consequences of the Plea (Claim 1(d))

Obute next contends that counsel provided ineffective assistance by failing to explain the consequences of his guilty plea, including failing to explain the application of the sentencing enhancement for maintaining a premise and for a leadership role, failing to explain that the Government was seeking a $4,000,000 personal money judgment as part of the forfeiture, and failing to give him a "meaningful warning about the realistic sentencing exposure."

As with his other claims, Obute's allegations in this claim are refuted by the record. The claim concerning the sentencing enhancement for maintaining a premise was discussed in Claim 1(c) above. As to the claims concerning the leadership enhancement and the forfeiture judgment, the plea agreement itself, which Obute swore he had read and understood, specifically includes clear provisions concerning them. His current affidavit, which baldly repudiates his sworn testimony at the rearraignment hearing, is not sufficient to support either an evidentiary hearing or relief. *See United States v. McClinton*, 782 F. App'x 312, 314 (5th Cir. 2019) (per curiam) ("*post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies" will not support relief under § 2255 and instead " 'contemporaneous evidence' is the key"); *see also United States v. Crain*, 877 F.3d 637, 650 (5th Cir. 2017) (explaining that "self-serving *post hoc* assertions about how

21/25

[the defendant] would have pled" do not negate the contemporaneous comments at the plea hearing).

And as to Obute's contention that he was not given a "meaningful warning" about his sentence exposure, the record again shows that he was advised of the statutory maximum, advised that the Guidelines would determine a sentencing range, and advised that the Court could impose any sentence up to the legal maximum after reviewing the Guidelines calculations. He specifically attested in signing the plea agreement that he understood how the Guidelines might apply and that any estimates he may have received about his potential sentence did not induce his guilty plea.

Obute does not allege any credible facts showing that he would not have entered his guilty plea but for his attorney's alleged misadvice about his potential sentence because the contemporaneous evidence from the rearraignment hearing conclusively negates his current assertions. He is not entitled to either relief or an evidentiary hearing on this claim, and it will be denied.

### E.    Misrepresentation of Sentence Exposure (Claim 1(e))

Obute next contends that his counsel provided ineffective assistance by failing to correct alleged misrepresentations about the possible sentences made by the prosecutor during the rearraignment hearing. The record again conclusively refutes this claim.

22/25

Obute points to the prosecutor's statement that if he did not accept the existing plea agreement, the Government would not make a better offer. The prosecutor stated that any future plea would have to be to both counts, each of which carried a twenty-year statutory maximum sentence that the Court had discretion to run consecutively. The Court also advised Obute that there is no parole in the federal prison system.

While Obute characterizes these statements as coercive threats, they are not. They are factually correct statements of the law. There were no misstatements for counsel to correct, and counsel does not provide ineffective assistance by failing to correct statements that are not, in fact, incorrect. Obute is not entitled to either relief or an evidentiary hearing on this claim.

### F.   Cumulative Error (Claim 2)

Finally, Obute asserts that even if no single error was sufficient to show prejudice, the Court should consider them together cumulatively. But "the Supreme Court has never affirmatively adopted a cumulative error doctrine with respect to ineffective assistance of counsel claims." *Hill v. Davis*, 781 F. App'x 277, 278 (5th Cir. 2019) (per curiam). The cases cited by Obute as warranting relief based on cumulative error did not involve claims of ineffective assistance of counsel. This claim is without merit and will be denied.

23/25

## IV.   CERTIFICATE OF APPEALABILITY

A certificate of appealability is required before Obute may appeal. *See*

*Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir. 1997) (both § 2254 and § 2255

require a certificate of appealability).  "This is a jurisdictional prerequisite because

the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate

of appealability, an appeal may not be taken to the court of appeals.'"  *Miller-El v.*

*Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability will not issue unless a defendant makes "a

substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

This requires the petitioner to demonstrate "that reasonable jurists would find the

district court's assessment of the constitutional claims debatable or wrong."

*Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S.

473, 484 (2000)).  The defendant must show "that reasonable jurists could debate

whether (or, for that matter, agree that) the [§ 2255 motion] should have been

resolved in a different manner or that the issues presented were 'adequate to deserve

encouragement to proceed further.'"  *Miller-El*, 537 U.S. at 336 (quoting *Slack*, 529

U.S. at 484).  As to claims that a district court rejects solely on procedural grounds,

the defendant must show both that "jurists of reason would find it debatable whether

the petition states a valid claim of the denial of a constitutional right and that jurists

of reason would find it debatable whether the district court was correct in its

24/25

procedural ruling." *Slack*, 529 U.S. at 484. A district court may deny a certificate of appealability on its own, without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (per curiam).

After carefully considering the record, the Court concludes that reasonable jurists would not find the Court's determination of Obute's constitutional claims either debatable or wrong. No certificate of appealability will therefore be issued.

## V.   CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** as follows:

1.    Petitioner Anthony Obute's motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, (Dkt. 91), is **DENIED**.

2.    Any other pending motions are **DENIED** as moot.

3.    A certificate of appealability will not be issued.

3.    This is a final judgment.

The Clerk will provide a copy of this Order to the parties.

SIGNED at Houston, Texas, on _____June 2_____, 2026.

_____
DAVID HITTNER
UNITED STATES DISTRICT JUDGE